UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MCGRAW-HILL COMPANIES, INC. AND PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES A. JONES; CA JONES MANAGEMENT GROUP, LLC; COLLEGE BOOK RENTAL COMPANY LLC, D/B/A COLLEGEBOOKRENTER.COM; JAMES W. BYARS; SE BOOK COMPANY, LLC D/B/A SOUTHEASTERN BOOK COMPANY; EXCESS, LLC, D/B/A INNOVATIVE PRINTING; BLACKROCK INVESTMENTS, LLC; MARC PEEBLES; EDUARDO RIVADENEYRA; INTER-EXPRESS FORWARDING, INC.; ACCU COPY d/b/a ACCU LINK; TOM O'BRIEN; and DOES 1-10. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT;** <br> 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT;** <br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT;** <br> 4. **REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION; AND** <br> 5. **TRADEMARK COUNTERFEITING** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs The McGraw-Hill Companies, Inc. and Pearson Education, Inc. (collectively, "Plaintiffs"), for their Complaint against Defendants Charles A. Jones; CA Jones Management Group, LLC; College Book Rental Company LLC, D/B/A Collegebookrenter.Com; Bud Byars; SE Book Company, LLC D/B/A Southeastern Book Company; Excess, LLC, D/B/A Innovative Printing; Marc Peebles; Eduardo Rivadeneyra; Inter-Express Forwarding, Inc.; Accu Copy D/B/A Accu Link; Tom O'Brien (collectively, "Defendants"), allege, on personal knowledge as

1

to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.      Plaintiffs are among the leading educational publishers in the world.   They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.   Defendants are a group of individuals and entities engaged in an elaborate scheme to profit from copyright infringement, the unauthorized removal or alteration of copyright management information, and trademark counterfeiting.   Defendant Charles A. Jones, a larger than life figure based in the small-town of Murray, Kentucky, is the mastermind, working closely with a number of key individuals and a web of related companies. All of Defendants materially participate in the illegal operation, which they engage in jointly.

2.      Defendants have created the equivalent of a textbook chop shop.   They purchase and ship into Murray, Kentucky large quantities of low-cost International Edition textbooks which they acquire from foreign sources.   Using employees, as well as student athletes at Murray State University, Defendants alter the books to remove the markings that indicate the book is an International Edition.   Defendants then use sophisticated printing and binding equipment to attach to these chopped International Editions the covers, pages, and logos that should appear on the U.S. Editions (hereinafter, "Chop Shop Editions").   In other words, Defendants camouflage the International Edition textbooks to appear as U.S. Editions.   Defendants then distribute these Chop Shop Editions to the public as though they are legitimate, authorized U.S. Editions, when they are not.

3.      Defendants dupe the unsuspecting consumer by removing the copyright page from the International Edition, hiding or removing certain other markings or stickers, and

replacing its cover with an unauthorized and infringing copy of the cover of the U.S. Edition. This a blatant violation of Plaintiffs' intellectual property rights. Accordingly, Plaintiffs hereby bring this Complaint for injunctive relief and damages.

## THE PARTIES

4.      Plaintiff McGraw-Hill is a New York corporation with its principal place of business at 1221 Avenue of the Americas, New York, New York 10035. McGraw-Hill is a global publisher and lifelong learning partner to students and teachers of all kinds and addresses virtually every aspect of the education market from prekindergarten through professional learning, using traditional materials, online learning and multimedia tools. McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering and other professions.

5.      Plaintiff Pearson is a Delaware corporation qualified to do business in the State of New York, with its principal place of business located at One Lake Street, Upper Saddle River, New Jersey 07458. Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage. With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all available media.

6.      Defendant Charles A. Jones ("Jones") is an individual who resides in 673 Robertson Road, Murray, Kentucky 42071. Jones is the present or former owner or operator of Defendants CA Jones Management Group, LLC; College Book Rental Company, LLC; SE Book

3

Company, LLC; and Excess, LLC.  He holds or has held the title of Chief Executive Officer of each of these entities, except perhaps not for Excess, LLC.

7.      Defendant CA Jones Management Group, LLC ("CAJM") is a Tennessee limited liability company with its principal place of business at 98 Breakers Bend Drive, Buchanan, Tennessee 38222-4995.

8.      Defendant College Book Rental Company, LLC d/b/a CollegeBookRenter.com ("CBR") is a Kentucky limited liability company with its principal place of business at 314 Main Street, Murray, Kentucky 42071.

9.      Defendant James W. "Bud" Byars ("Byars") is an individual who resides at 547 Oaks Country Club Road, Murray, Kentucky 42071.  Byars is an employee of CAJM and President of CBR.

10.     Defendant SE Book Company, LLC d/b/a Southeastern Book Company ("SEB") is a Kentucky limited liability company with its principal place of business at 3333 U.S. Highway 641 North, Murray, Kentucky 42071.

11.     Defendant Excess, LLC d/b/a Innovative Printing ("Innovative") is a Kentucky limited liability company with its principal place of business at 601 North 4th Street, Murray, Kentucky 42071.

12.     Defendant Marc Peebles ("Peebles") is an individual who resides at 307 Oakdale Drive, Murray, Kentucky 42071.  Peebles oversees and runs the operations of Innovative.

13.     Defendant Blackrock Investments, LLC ("Blackrock") is a Kentucky limited liability corporation with its principle place of business at 306 Andrus Drive, Murray, Kentucky, 42071.

14.     Defendant Eduardo Rivadeneyra ("Rivadeneyra") is an individual who resides at 7210 Lake Circle Drive, Apartment 208, Margate, Florida 33063. Rivadeneyra is the President of Defendant Inter-Express Forwarding, Inc.

15.     Defendant Inter-Express Forwarding, Inc. is a Florida corporation with its principal place of business at 1068 NW 53rd Street, Fort Lauderdale, Florida 33309.

16.     Defendant Accu Copy of Greenville, Inc. d/b/a Acculink ("Acculink") is a North Carolina corporation with its principal place of business at 1055 SW Greenville Boulevard, Greenville, North Carolina 27834.

17.     Defendant Tom O'Brien ("O'Brien") is an individual who resides at 114 West Greene Street, Snow Hill, North Carolina 28580.  O'Brien owns and operates Acculink.

18.     Defendants Does 1 through 10 are each fictitious names used to refer to certain individuals or entities whose true identities are not currently known to Plaintiffs.  Once Plaintiffs ascertain their identities, Plaintiffs will seek leave of the Court to amend the Complaint to include such individuals or entities as named defendants.   The Doe Defendants are the individuals and/or entities responsible for the copyright infringement, removal or alteration of copyright management information, or trademark counterfeiting set forth herein.   The Doe Defendants also include those individuals and/or entities that financially benefit from the infringement of Plaintiffs' copyrighted works and fail to exercise their right and ability to control the infringement, and/or that have knowledge of the infringement of Plaintiffs' copyrighted works and encourage or materially contribute to it.  Each Doe Defendant acted in concert with, as agent or representative for, or at the request or on the behalf of the named Defendants.  Thus, the allegations of wrongful conduct by Defendants set forth herein are also applicable to and alleged against each Doe Defendant.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction.

20.     This is an action arising under the Copyright Act, 17 U.S.C. § 101, et al. and under the Lanham Act, 15 U.S.C. § 1114.

21.     Venue is proper in this district under 28 U.S.C. §§ 1391. Jurisdiction in this district is proper because Defendants, without the consent or permission of Plaintiffs, engaged in or caused the unauthorized reproduction of Plaintiffs' copyrighted material, and the unauthorized distribution of those infringing reproductions, for which Plaintiffs have the exclusive rights. Such unlawful conduct occurred in this district, along with injury suffered by Plaintiffs.

## GENERAL ALLEGATIONS

**Plaintiffs**

22.     Plaintiffs each publish a variety of educational textbooks, among other works. Their textbooks are used worldwide at educational institutions and in other learning environments.  Their textbooks are widely available in the market place, including in retail and online bookstores, for rental or purchase.

23.     Plaintiffs each invest substantial sums of money, time, expertise, and talent to develop their textbooks and subsequent editions of those textbooks.  Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

24.     Plaintiffs each invest significant resources annually in the worldwide advertisement and promotion of their goods and services.  Plaintiffs and/or their predecessors

have invested decades of effort in building a reputation of superior quality in the publishing industry.

25.     Plaintiffs sell their textbooks to students around the world, sometimes in the form of specially prepared International Editions. Plaintiffs include on the covers of their International Edition a large, conspicuous statement indicating that the book is an International Edition, and specifying those particular markets where sale of the book is permitted or where it is prohibited. Re-sale of International Editions in North America is not authorized.

26.     Plaintiffs recognize that students around the world should have access to first-class educational materials. In order to provide this opportunity to students in developing countries, Plaintiffs sell International Editions at lower price points than they do the U.S. Editions sold domestically. Re-sale of those International Editions in the United States at below market prices would undercut sales of U.S. Editions. For this reason, when International Edition books are improperly sold in the United States as U.S. Editions, it harms Plaintiffs.

27.     Plaintiffs routinely include in their textbooks a copyright page as one of the first pages in their books. This is done to provide a purchaser with information on the book he or she is purchasing, including its identity, as well as to provide information that permits Plaintiffs and their distributors to track the origination and identify of their books. Typically the information contained on the copyright page includes, among other things: the title of the book; the author; the name of the publisher; the names of editors of the book; the date of copyright; certain Library of Congress Cataloging-In-Publication Data; the date and print run in which the book was manufactured; the ISBN numbers; and information indicating whether the books is a U.S. Edition or an International Edition.

28.     The revenues from Plaintiffs' sales of textbooks are important to their financial health.  Among other things, a substantial decline in revenue from textbook sales could cause Plaintiffs to cease publication and/or reinvestment in one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific and educational progress by making it more difficult to publish deserving works.  Both publishers and authors alike are deprived of income when their books are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

29.     Plaintiffs have each duly registered with the United States Copyright Office their copyright in those works described on Exhibit A (hereinafter, "Plaintiffs' Authentic Works"), among others.  Plaintiffs Authentic Works bear trademarks and service marks as set forth on Exhibit B, among others (hereinafter, "Plaintiffs' Marks"), which Plaintiffs have duly registered on the Principal Register of the United States Patent and Trademark Office.  Plaintiffs' Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and /or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

**Defendants**

30.     For a number of years, Defendants Jones, Byars, and SEB, LLC have been purchasing International Edition textbooks, including of Plaintiffs' Authentic Works, which they then alter in an attempt to pass them off as the corresponding U.S. Editions textbooks.  This activity takes place under the watchful eye, direction, and participation of Defendant CAJM. The International Editions are altered:  (a) by using black electric tape or "Used Book" stickers

to cover up the labels or markings that identified the books as International Editions not for sale in the United States; (b) by using hot irons or baby powder to remove stickers that identified the books as International Editions not for sale in the United States; and (c) by using dremels to file off logo stamps identifying the books as International Editions not for sale in the United States.

31.     Not content with their existing operation, Defendants Jones and Byars hatched a plan to significantly expand it.  Defendant Jones and Byars, among others, met with and toured one of their textbook suppliers, Ingram Book Company in Tennessee.  At that time, they observed the equipment and process necessary to print and bind textbooks.  On the trip home, Defendants Jones and Byars decided they would acquire printing and binding equipment that they could use to create covers and pages of U.S. Edition books that they could attach to International Editions that they disassembled.

32.     The idea was to rent the textbooks through Defendant CBR.  By renting them through this online store, they would not have to put the inventory in a bookstore, where a textbook publisher, such as Plaintiffs, could observe the infringing materials on a bookshelf.  Moreover, by renting the textbooks to students, Defendants would have the books returned to them so that they were not left in the marketplace for detection.

33.     To effectuate this plan, Defendant Jones purchased a company, Defendant Innovative Printing and Graphics, which had the printing and binding equipment they needed.  The company was owned and run by Defendant Peebles.  Peebles was to remain in charge day-to-day, under the new ownership and control of Defendant Jones.

34.     The printing and binding equipment was moved to a facility hidden behind a medical clinic run by Defendant Byars' wife.   Access to this facility was strictly controlled.

35.     Defendants together engage in the production and distribution of counterfeit textbooks on a massive scale.  Defendant Eduardo Rivadeneyra and Inter-Express would ship to this facility truckloads of International Edition textbooks, including but not limited to Plaintiffs' Authentic Works.  Defendants remove the covers, the copyright pages, and any other indicators that the book is an International Edition.  These can include stickers, logos and other markings indicating that they are "International Editions" not to be sold in the United States.  Defendants then rebind the book with an unauthorized infringing copy of the cover of the U.S. Edition. Defendants interject these Chop Shop Editions into the marketplace, through their online textbook rental service.

36.     In addition to engaging in these activities in Kentucky using the equipment of Defendant Innovative, Defendants often involved others as well.  Regularly, Defendant Peebles, who operates Defendant Innovative, would ship to Defendant O'Brien, who operates Accu Link, large quantities of uncut, unbound counterfeit copies of U.S. Edition covers of Plaintiffs' textbooks, including but not limited to Plaintiffs' Authentic Works.  These covers had counterfeit copies of Plaintiffs' Marks printed on them.  Along with these covers, the shipment would contain a brand new copy of the relevant textbook for Defendants O'Brien and Accu Link to use as a sample for binding purposes.  Although these sample books were brand new, they were falsely marked as "Used."   Defendants O'Brien and Accu Link bound these counterfeit copies onto textbooks, including Plaintiffs' Authentic works, and then distributed them.

37.     Plaintiffs and others have rented textbooks from Defendant CBR, including Plaintiffs' Works.  These books often are rebound International Editions that have counterfeit covers for the U.S. Edition of the same book.

10

38.     In addition to the counterfeit covers, many of the textbooks have had the copyright page for the book removed.  In addition, Defendants are also printing and rebinding certain other pages of the book into their Chop Shop Version.  Where this occurs, it typically involves content printed on the inside cover of the U.S. Edition.

39.     Defendants have conceived of and created a sophisticated counterfeiting operation.  It is not cost effective for such operations to infringe a limited number of titles or books.  Rather, they are created to reproduce and/or alter a large quantity of titles and books. Defendants illegal activities complained of herein involve, upon information and belief, over 100 titles and many thousands of books.

40.     Defendant Jones has owned or controlled Defendants CAJM, CBR, SEB, and Innovative, involving and directing each in the illicit activities complained of herein.  CAJM provides services to CBR and SEB, managing those entities and even employing the individuals that actually work for them.  CBR and SEB do not employ anyone.  Instead, they contract with CAJM for management services and all personnel.

41.     Defendant Jones is the CEO of Blackrock, and owns fifty percent of the company with his business partner, David Griffin.  Blackrock was formed to be the primary owner of SEB, and has no purpose or function other than to own SEB.  It profits from SEB's infringing conduct, and facilitates Jones' control over SEB.

42.     The Defendants not owned or controlled by Defendant Jones also participated in the illicit activities complained of herein, typically by providing the International Editions textbooks and/or binding counterfeit book covers onto the International Editions to make them appear to be U.S. Editions.

43.    Each of the individual Defendants has directly participated in this massive scheme.

### FIRST CLAIM FOR RELIEF
### Direct Copyright Infringement - 17 U.S.C. § 106

44.    Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

45.    Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office.

46.    At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed or otherwise transferred to any of the Defendants.

47.    Beginning on an unknown date and continuing at least into 2012, Defendants, with knowledge of Plaintiffs' duly registered copyrights in Plaintiffs' Authentic Works, infringed Plaintiffs' copyrights by, among other things, deliberately (a) making unauthorized copies of the book covers of U.S. Editions; (b) distributing to others the unauthorized copies of book covers of U.S. Editions; and/or (c) distributing International Edition textbooks bearing counterfeit copies of the book covers of U.S. Editions.  Defendants engaged in the foregoing acts without the permission, license or consent of Plaintiffs.

48.    Defendants have infringed in the United States, including New York, among other places, without the permission, license or consent of Plaintiffs, Plaintiffs' exclusive rights to reproduce and distribute to the public by sale or other transfer of ownership, and to authorize the reproduction and distribution to the public by sale or other transfer of ownership, of Plaintiffs' Authentic Works.

49.     Defendants undertook these actions both individually and jointly.  Defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage, violate and infringe Plaintiffs' copyrights in the Authentic Works and other works.

50.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

51.     Upon information and belief, Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

52.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF
### Contributory Copyright Infringement

53.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

54.     Defendants knew or had reason to know of the above-described infringement of Plaintiffs' copyrighted works, including but not limited to Plaintiffs' Authentic Works.  By engaging in the illegal conduct alleged above, and in addition to directly organizing and effectuating such infringing activities, Defendants each also induced, caused, and materially contributed to infringing conduct both by each other and by third parties.

55.     Defendants undertook these actions both individually and jointly.  Defendants conspired and acted in concert with one another to accomplish their scheme to commit the above

acts, which they knew would damage, violate and infringe Plaintiffs' copyrights in the Authentic Works and other works.

56.     As a result of the Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

57.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

58.     As a result of Defendants' unlawful conduct as set forth above, all Defendants, in addition to their liability for direct infringement of Plaintiffs' copyrights, are jointly and severally liable for contributory infringement of Plaintiffs' copyrights and other intellectual property rights.

59.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## THIRD CLAIM FOR RELIEF
### Vicarious Copyright Infringement

60.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

61.     In addition to committing the direct and contributory acts of infringement alleged herein, Defendants supervised and facilitated the infringing and illegal activity described herein, and had the right and ability to control it.  Further, Defendants had a direct financial interest in, and stood to gain a direct financial benefit from, the deliberate, malicious infringing activity.

62.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

63.     Upon information and belief, Defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

64.     As a result of Defendants' unlawful conduct as set forth above, Defendants, in addition to their liability for direct and contributory infringement of Plaintiffs' copyrights, are jointly and severally liable for vicarious infringement of Plaintiffs' copyrights and other intellectual property rights.

65.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

**FOURTH CLAIM FOR RELIEF**
**Removal or Alternation of CMI – 17 U.S.C. § 1202**

66.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

67.     Defendants are, without the authority of the copyright owner or the law, (1) intentionally removing or altering copyright management information, (2) distributing or importing for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, and/or (3) distributing or importing for distribution works, or copies of works, knowing that copyright management information has been removed or altered without authority

of the copyright owner of the law, knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement of the copyright owner's exclusive rights.

68.     Defendants undertook these actions both individually and jointly.  Defendants conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would damage Plaintiffs, including by inducing, enabling, facilitating or concealing an infringement of their exclusive rights.

69.     As a result of the Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

70.     Defendants' unlawful conduct, as set forth above, was deliberate, intentional, malicious and willful.

71.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further removal or alteration of copyright management information.

**FIFTH CLAIM FOR RELIEF**
**Trademark Counterfeiting – 15 U.S.C. § 1114**

72.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

73.     Defendants are infringing the federally registered Plaintiffs' Marks though their use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

74.     Defendants are intentionally using Plaintiffs' Marks on unauthorized product. Defendants are intentionally infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

75.     The counterfeiting by Defendants of Plaintiffs' Marks has caused and unless enjoined will continue to cause serious and irreparable injury to the reputation and goodwill of Plaintiffs for which Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.     That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

2.     An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

3.     That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 1203;

4.     An order enjoining Defendants from further unauthorized removal or alteration of copyright management information, pursuant to 17 U.S.C. § 1203;

5.     That Defendants be required to pay Plaintiffs such damages as Plaintiffs' have sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

6.     An order enjoining Defendants from further trademark counterfeiting, pursuant to 15 U.S.C. § 1116;

7.      That Defendants be required to deliver up to be held as evidence and later for destruction all products, packaging, labels, literature, advertising and other material bearing

17

imitations or reproductions, including confusingly similar variations of, Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

8.      That Defendants be required to deliver up all devices or product that is in the custody or control of Defendants and that the Court has reasonable cause to believe was involved in a violation of 17 U.S.C. § 1203;

9.      An order preventing the further unfairly competitive or otherwise unlawful acts by Defendants complained of herein;

10.      For prejudgment interest at the applicable rate;

11.      For attorneys' fees costs and costs of suit; and

12.      For such other and further relief the Court deems proper.


Respectfully submitted,

/s/
_____
Matthew J. Oppenheim (NY. Bar No. 4314605)
Scott A. Zebrak (Pro Hac Vice Pending)
Julie C. Chen (NY Bar No. 2797918)
OPPENHEIM + ZEBRAK, LLP
4400 Jenifer Street, NW, Suite 250
Washington, DC  20015

Counsel for Plaintiffs

Dated:  September 19, 2012

# EXHIBIT A

| Publisher | Title | Copyright Registration Number |
|---|---|---|
| McGraw-Hill | Business Driven Information Systems 3rd | TX 7-316-295 |
| McGraw-Hill | Educational Psychology 5th | TX 6-515-718<br>Additional registrations pending |
| McGraw-Hill | Essentials of Lifespan Development 2nd | TX 7-002-674<br>Additional registrations pending |
| McGraw-Hill | Human Biology 12th | TX 7-225-793<br>Additional registrations pending |
| McGraw-Hill | Managerial Accounting 14th | TX 7-230-160<br>Additional registrations pending |
| McGraw-Hill | Microbiology: A Systems Approach 3rd | TX 7-403-927 |
| McGraw-Hill | Organic Chemistry 3rd | TX 7-130-468 |
| McGraw-Hill | The Art of Public Speaking 11th | TX 4-745-823<br>Additional registrations pending |
| Pearson | College Physics (International Paperback) 9th | TX 7-335-918 |
| Pearson | College Physics (With Mastering Physics) 9th | TX 7-335-918 |
| Pearson | Concepts of Genetics 10th | TX 7-458-671 |

# EXHIBIT B

| Publisher | Title | Trademark | Trademark Registration Number |
|---|---|---|---|
| McGraw-Hill | Business Driven Information Systems 3rd | McGraw-Hill; The McGraw-Hill Companies; Irwin | 1,350,345; 2,899,528; 3,103,212; 1,718,118 |
| McGraw-Hill | Educational Psychology 5th | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| McGraw-Hill | Essentials of Lifespan Development 2nd | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| McGraw-Hill | Human Biology 12th | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| McGraw-Hill | Managerial Accounting 14th | McGraw-Hill; The McGraw-Hill Companies; Irwin | 1,350,345; 2,899,528; 3,103,212; 1,718,118 |
| McGraw-Hill | Microbiology: A Systems Approach 3rd | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| McGraw-Hill | Organic Chemistry 3rd | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| McGraw-Hill | The Art of Public Speaking 11th | McGraw-Hill; The McGraw-Hill Companies | 1,350,345; 2,899,528; 3,103,212 |
| Pearson | College Physics (International Paperback) 9th | Pearson; Addison Wesley | 2,007,295; 2,599,724; 2,600,081; 2,652,792; 2,679,355; 2,691,830; 2,746,878; 2,188,798; 2,400,130 |
| Pearson | College Physics (With Mastering Physics) 9th | Pearson; Addison Wesley | 2,007,295; 2,599,724; 2,600,081; 2,652,792; 2,679,355; 2,691,830; 2,746,878; 2,188,798; 2,400,130 |
| Pearson | Concepts of Genetics 10th | Pearson; Benjamin Cummings | 2,007,295; 2,599,724; 2,600,081; 2,652,792; 2,679,355; 2,691,830; 2,746,878; 1,189,279; 2,621,299; 2,2671,773 |